IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00100-MR-WCM

| | | |
|---|---|---|
| NHM CONSTRUCTORS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| HEARTLAND CONCRETE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's Motion to Dismiss (Doc.

9), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for

the entry of a recommendation.

I.      Relevant Background

A. Procedural History

On February 15, 2021, Plaintiff NHM Constructors, LLC ("Plaintiff")

filed a Complaint in the Superior Court of Buncombe County, North Carolina.

Doc. 1-1. On March 11, 2021, Plaintiff filed an Amended Complaint. Doc. 1-2.

On April 12, 2021, Defendant Heartland Concrete, LLC ("Defendant")

removed the matter to this Court. Doc. 1.[1]

_____

[1] Defendant asserts that this Court may exercise subject matter jurisdiction pursuant
to 28 U.S.C. § 1332. On February 4, 2022, Defendant filed an "Amended Disclosure
of Constituent Members." Doc. 16. Therein, Defendant stated that it is a limited

1

On June 28, 2021, Plaintiff, with Defendant's consent, filed a second Amended Complaint (the "Second Amended Complaint"). Doc. 6. The Second Amended Complaint is Plaintiff's current operative pleading.

On August 16, 2021, Defendant filed the instant Motion to Dismiss along with a supporting memorandum. Docs. 9, 10. Plaintiff has responded, and Defendant has replied. Docs. 11, 12.

### B. Plaintiff's Allegations

Plaintiff's Second Amended Complaint alleges as follows:

Plaintiff, a licensed general contractor, was awarded a project by the North Carolina Department of Transportation ("NCDOT") to rehabilitate multiple bridges in Western North Carolina (the "Project"). Seven of these bridges involved "latex overlays." Doc. 6 at ¶¶ 1, 3.

Defendant held itself out as having prior experience supplying concrete type materials on NCDOT projects, had produced and sold specialized modified latex concrete in the past, and was one of a handful of producers of the specialized concrete that was qualified to work on NCDOT projects. Id. at ¶¶ 2, 4. Defendant knew that if it supplied materials for a NCDOT project, such materials would have to conform to NCDOT standards. Id. at ¶ 4.

---

liability company whose sole member is a citizen of Virginia and that Plaintiff has no members who reside outside of North Carolina. Id.

After the Project was awarded to Plaintiff, Defendant contacted Plaintiff and requested the opportunity to submit "an after the fact price." Id. at ¶ 5. Plaintiff responded with an email containing a link to the relevant NCDOT project files, plans, and contract requirements and specifications (the "Specifications"). Id. at ¶ 6. The Specifications included documents specific to the Project as well as the 2018 NCDOT Standard Rate Roadway Specifications. Id. at ¶ 7.

Subsequently, Defendant issued to Plaintiff a series of proposals to provide "Latex Modified Concrete" for the Project. Ultimately, three different proposals were accepted by Plaintiff, id. at ¶ 8, and the parties "made at least 3 written contracts," copies of which are attached to the Second Amended Complaint. Id. at ¶ 8; Doc. 6-1.[2] Plaintiff alleges that these proposals "expressly incorporated the relevant NCDOT Project Specifications" and that it accepted the proposals "in reasonable reliance on the express statements that Defendant's proposal[s] included the Specifications [and] that Defendant had expertise in NCDOT procurement and project procedures." Id. at ¶¶ 8, 10. Plaintiff further alleges that it relied on Defendant's warranties and on the

---

[2] The contracts may be considered in connection with the Motion to Dismiss. See e.g., Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that courts may take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss so long as they are integral to the complaint and authentic).

fact that the parties had worked on other NCDOT projects together in the past. Id.[3]

Defendant provided material for the seven bridge overlays between September 2018 and August 2019. Defendant mixed the materials on location in its mixers. Id. at ¶ 11.

After each concrete pour was completed, and within a "12 Month Guarantee Period," the NCDOT noted "bullet shaped voids and openings" in the materials that Defendant had supplied and deemed the material to be defective, nonconforming, and showing unacceptable distress. Id. at ¶ 12. The NCDOT therefore requested remediation on all seven bridges. Id.

On August 23, 2019, Plaintiff informed Defendant via email that it was placing a hold on the remaining $77,341 due to Defendant (the "Holdback Amount"). Id. at ¶ 13.

In response, Defendant assured Plaintiff that it would resolve the issues with the concrete. Id. at ¶ 13. In addition to verbal assurances, Defendant sent an email to Plaintiff on September 11, 2019 wherein Defendant "admitted that the 'surface problems' in Defendant's Materials [were] due to the sand and small #7 stone it elected to incorporate into its mix," and proposed a repair

---

[3] Plaintiff also alleges that during the course of the Project, Defendant "cooperated with applicable NCDOT requirements" and that this is further evidence of "Defendant's understanding of the NCDOT process, and shows its acquiescence to the Specifications." Doc. 6 at ¶ 9.

plan. Id. at ¶ 13. Plaintiff alleges that "to induce the Plaintiff to release one half" of the Holdback Amount, Defendant further stated via email that it "agreed to pay to repair the pot marks that occurred in the surface of the 7 bridges…." Id. In reliance on these assurances, Plaintiff released the entire Holdback Amount (rather than half of the Holdback Amount) to Defendant.

The NCDOT, however, did not accept Defendant's proposed repair plan and demanded that the overlay of all seven bridges be removed and replaced (i.e., a complete remediation). Id. at ¶ 14. In December of 2019, and at Defendant's request, Plaintiff provided Defendant with an estimated cost for a complete remediation exceeding $2.3 million. Id. at ¶ 16.

Defendant did not deny responsibility for the damages but submitted a claim to one or more of its liability carriers. Id. at ¶ 17. The carriers, however, denied coverage for the claim, and on September 28, 2020, Defendant advised Plaintiff that it had "no obligation, and that we lack both the ability and means to perform the work demanded by NCDOT or compensate [Plaintiff] for that work." Id. at ¶ 18.

Plaintiff alleges that it remains obligated by the terms of its contract with the NCDOT to carry out the requested remediation of the bridges, and its failure to do so may expose it to litigation with the NCDOT or cause the NCDOT to suspend Plaintiff's right to bid on other NCDOT projects, which is Plaintiff's primary source of construction work. Id. at ¶ 19.

## II. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## III. Discussion

Plaintiff's Second Amended Complaint asserts claims for breach of contract, fraud, unfair and deceptive trade practices, negligence, products liability, breach of express warranties, and breach of implied warranties. Additionally, Plaintiff alleges, in the alternative, that its release of the entire Holdback Amount, in reliance on Defendant's statements that Defendant agreed to pay the costs of repair, formed a second contract (the "Repair Contract") that Defendant also breached.

By the Motion to Dismiss, Defendant seeks the dismissal of all of Plaintiff's claims, except the claim for breach of contract. Defendant asserts that Plaintiff's other claims are restatements of Plaintiff's breach of contract claim, are barred by the economic loss rule, and/or that Plaintiff has failed to state a claim.

"Because this case is in federal court based on diversity jurisdiction, the law of the forum state—in this case, North Carolina—applies." Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 782-83 (4th Cir. 2012).

### A. Plaintiff's Tort Claims

#### 1. Fraud

Plaintiff alleges that Defendant knowingly and falsely promised that it would pay for repairs to the seven bridges, and that in reliance on that promise, Plaintiff was damaged by releasing the Holdback Amount. See Doc. 11 at 8.

7

Defendant responds that Plaintiff's fraud claim is not separate from its breach of contract claim. Doc. 10 at 7.

"The elements of a civil cause of action for fraud are (1) a false representation or concealment of a material fact (2) that is reasonably calculated to deceive (3) made with intent to deceive (4) which does in fact deceive and (5) results in damage to the injured party." <u>Charlotte Motor Speedway, LLC v. County of Cabarrus</u>, 230 N.C.App. 1, 10, 748 S.E.2d 171, 178 (2013). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Here, Plaintiff's fraud claim is based on conduct that occurred after the breach of the underlying contract, to wit: Defendant's alleged false representation that it was going to repair the seven bridges. Such conduct, however, is intertwined with Plaintiff's breach of contract claim. <u>See International Designer Transitions, Inc. v. Faus Group, Inc.</u>, 663 F.Supp.2d 432, 445 (W.D.N.C. 2009) (finding the argument that Defendant induced plaintiff to alter shipping schedules and increase inventory based on post-contract discussion and promises did not sustain a claim for fraud because crux of the matter was a contract dispute).

8

Further, Plaintiff has alleged that Defendant admitted that the surface problems in the seven bridges were due to materials Defendant incorporated into its mix, that Defendant proposed a method for repairing the bridges that was later rejected by the NCDOT, that approximately three months after Plaintiff released the Holdback Amount, Defendant inquired as to the estimated cost of complete remediation as demanded by the NCDOT, and that following Defendant's receipt of an estimate for complete remediation, Defendant received information from its insurers declining coverage for Defendant's claim. Under these circumstances, the undersigned is not persuaded that Plaintiff has alleged sufficient facts to indicate that Defendant intended to deceive Plaintiff at the time it originally proposed repairs to the bridges. See Great American Emu Co. v. E.J. McKernan Co., 509 F.Supp.3d 528, 539 (E.D.N.C. 2020) ("There are no facts alleged in conjunction with these allegations . . . permitting an inference that defendant knew at the time that it could not perform as promised, or that it intended at that time not to perform as promised").

### 2.   The Economic Loss Rule

"North Carolina's economic loss doctrine provides that a breach of contract does not ordinarily give rise to a tort action by the promisee against the promisor." Severn Peanut Co. v. Industrial Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015) (internal citations and quotations omitted). The rule "prohibits

recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk. In cases arising out of the sale of failed goods, the economic loss doctrine thus bars recovery for purely economic loss in tort, as such claims are instead governed by contract law." Id.; see also Wheeler v. BMW of North America LLC, 534 F.Supp.3d 527, 532 (W.D.N.C. 2021) ("The economic loss rule addresses the intersection between contract remedies (including warranty remedies) and tort remedies") (quoting Kelly v. Georgia-Pacific LLC, 671 F.Supp.2d 785, 791 (E.D.N.C. 2009)).[4]

### a. Negligence

### i. Duty

"To pursue a tort claim and a breach of contract claim concerning the same conduct, 'a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract.'" Kelly v. Georgia-

---

[4] North Carolina's economic loss rule has been recognized by both North Carolina state courts and federal courts. See N.C. State Ports Authority v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 240 S.E.2d 345 (1978) *rejected in part on other grounds by* Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230 (1985); Lord v. Customized Consulting Specialty, Inc., 182 N.C.App. 635, 639 (2007); Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 166 (4th Cir. 2018) (considering North Carolina's economic loss rule, and explaining that "a plaintiff may not circumvent the economic loss rule simply by claiming that a breach of contract claim also sounds in fraud," and that instead the court should consider whether "the defendant has breached some duty other than a contractual duty, such that the tort claim is 'identifiable and distinct' from the breach of contract claim") (internal quotes omitted); Wheeler, 534 F.Supp.3d at 532 ("the economic loss rule negates even fraud claims if the claim in question is essentially a 'breach of contract claim that also sounds in fraud'") (quoting Legacy Data, 889 F.3d at 166).

10

Pacific LLC, 671 F.Supp.2d 785, 791 (E.D.N.C. 2009) (quoting <u>Vanwyk Textile</u>

<u>Sys., B.V. v. Zimmer Mach. Am., Inc.</u>, 994 F. Supp. 350, 362 (W.D.N.C. 1997));

<u>Legacy Data</u>, 889 F.3d at 166 ("A tort action must be grounded on a violation

of a *duty* imposed by operation of law, not a violation of a duty arising purely

from 'the contractual relationship of the parties'") (emphasis in original)

(quoting <u>Rountree v. Chowan Cty.</u>, 252 N.C.App. 155, 160, 796 S.E.2d 827, 831

(2017) (internal quotes omitted)).

Here, Plaintiff has not alleged that Defendant owed a duty to Plaintiff

outside of Defendant's contractual obligations. <u>See</u> Doc. 6 at ¶ 45 ("Defendant

owed a duty to exercise due care in selecting materials and mix components

and preparing its mix for the product prepared and sold"); ¶ 27 ("Defendant

breached the Contracts by supplying non-conforming Materials and has

admitted same").

### ii.    Other Property

The economic loss rule "does not bar tort claims when the damage

sustained is to property other than the property which was the subject of the

contract." <u>Jones v. Caterpillar, Inc.</u>, No. 7-16-cv-00331-H, 2017 WL 4865537,

at *3 (E.D.N.C. July 11, 2017); <u>see also</u> <u>Vecellio & Grogan, Inc., v. Piedmont</u>

<u>Drilling & Blasting, Inc.</u>, 183 N.C.App. 66, 644 S.E.2d 16 (2007) (summary

judgment was improperly entered where plaintiff alleged damage to property

other than that which was the subject of the contract between the parties,

11

specifically, that defendant's blasting services relative to construction of a sewer line resulted in damage to a separate sewer line).

Conversely, the rule does apply when the damage sustained is to property that is the subject of the parties' contract. See Atlantic Coast Mechanical, Inc. v. Arcadis, Geraghty & Miller, Inc., 175 N.C.App. 339, 346, 623 S.E.2d 334, 340 (2006) (when a generator malfunctioned and caused damage to the plant's electrical equipment, finding only economic loss because the generator was installed as "a component part of the system"); Wilson v. Dryvit Sys., Inc., 206 F.Supp.2d 749, 754 (E.D.N.C. 2002), aff'd, 71 F. App'x. 960 (4th Cir. 2003) (applying North Carolina law and noting that defendant's "cladding is an integral component of plaintiffs' house. The damage caused ... therefore constitutes damage to the house itself. No 'other' property damage has resulted, and plaintiffs have suffered purely economic losses"); Gregory v. Atrium Door & Window Co., 106 N.C.App. 142, 143–44, 415 S.E.2d 574, 575 (1992) (water damage to flooring caused by malfunctioning and deteriorating doors constituted economic loss not recoverable in negligence); see also N.C. State Ports Auth., 294 N.C. at 82 (setting out four scenarios where the economic loss rule did not apply, including where "the injury, proximately caused by the promisor's negligent, or willful, act or omission in the performance of his contract, was to property of the promisee other than the property which was the subject of the contract…."); cf.

Here, Plaintiff has alleged damage to its "separate work, that being the joint system installed by Plaintiff consisting of silicone joint seals, elastomeric concrete headers, and asphalt pavement…." Doc. 6 at ¶ 47(b). However, Plaintiff also has alleged that it contracted with the NCDOT to construct the seven bridge overlays, and then contracted with Defendant to supply modified latex concrete for the overlays. Under these circumstances, the undersigned is not persuaded that Plaintiff's joint system should be considered "other" property for purposes of the economic loss rule. See Ford v. All-Day of the Carolina, Inc., 211 N.C.App. 197, 2011 WL 1483726, at *3 (April 19, 2011) (affirming dismissal of Plaintiff's negligent construction claim arising out of breach of underlying construction contract pursuant to the economic loss rule and explaining that defendant's negligent construction of a foundation pier system "caused damage only to the house itself").

### b. Products Liability

The economic loss doctrine "was conceived of as a means by which to confine products liability in tort to damages for personal injury and injury to property other than the goods sold, and leave to contract law the question of liability for purely economic losses." Ellis-Don Const., Inc. v. HKS, Inc., 353 F.Supp.2d 603, 606 (M.D.N.C. 2004); see also AT&T Corp. v. Medical Review of North Carolina, Inc., 876 F.Supp. 91, 93 (E.D.N.C. 1995) ("with respect to what losses are recoverable in a products liability suit, North Carolina follows

13

the majority rule and does not allow the recovery of purely economic losses in an action for negligence") (internal citations and quotes omitted).

Courts analyze products liability cases in the construction context based on whether the damage is to other property or to the subject of the contract itself. See e.g., Wilson v. Dryvit Systems, Inc., 206 F.Supp.2d 749, 753 (E.D.N.C. 2002), aff'd, 71 Fed.Appx. 960 (2003) (finding, on summary judgment, that defendant's cladding was an integral component of plaintiff's house, and therefore damage to the house itself resulted in plaintiff suffering purely economic losses). As discussed above, Plaintiff has not sufficiently alleged damage to "other" property.

## B. Unfair and Deceptive Trade Practices

A Chapter 75 claim "cannot 'piggyback' on a breach of contract action, even where the breach of contract was clearly intentional." ACS Partners, LLC v. American Group, Inc., 3:09cv464–RJC–DSC, 2010 WL 883663, at *9 (W.D.N.C. Mar. 5, 2010) (citing Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998)); see also PCS Phosphate Co., Inc. v. Norfolk Southern Corp., 559 F.3d 212 (4th Cir. 2009) (refusing to award treble damages pursuant to Chapter 75 for claims that were essentially contractual in nature because it would be tantamount to re-writing the parties' contract); Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corporation, 16 CVS 217, 2017 WL 1148793, at *8 (N.C. Super. Ct. Mar. 27, 2017) (finding false and

14

fraudulent statements and "concealed plans to breach the Agreement" did "not constitute unfair or deceptive trade practices").

"North Carolina courts have consistently held that a party may demonstrate and prove [a Chapter 75] claim in conjunction with a breach of contract claim if it can show substantially aggravating and egregious circumstances attending the breach." Foodbuy, LLC v. Gregory Packaging, Inc., 987 F.3d 102, 121 (4th Cir. 2021).

Here, Defendant argues that Plaintiff does not allege any actions that constitute unfair or deceptive trade practices. Doc. 10 at 8-11.[5] In response, Plaintiff contends that Defendant's conduct involved immoral, unethical, and deceptive actions. See Doc. 11 at 9 ("Plaintiff submits that any reasonable person would find it immoral, unethical, and deceptive for a subcontractor to accept responsibility for a defect, pledge to remedy the defect in exchange for immediate payment and accept that payment without in fact having any intention of providing the promised remedy").

---

[5] Defendant also "incorporates" its argument relative to Plaintiff's fraud claim in support of dismissal of Plaintiff's Chapter 75 claim. Doc. 10 at 8. However, to the extent Defendant's position is that Plaintiff's Chapter 75 claim is barred by the economic loss rule, the Fourth Circuit has rejected that position. See Foodbuy, LLC v. Gregory Packaging, Inc., 987 F.3d 102, 121 (4th Cir. 2021) (declining to extend the economic loss rule to bar Chapter 75 claim because claim is "the creation of statute" and "neither wholly tortious nor wholly contractual in nature").

15

"[A] broken promise is unfair or deceptive only if the promisor had no intent to perform when he made the promise." Gilbane Bldg. Co. v. Federal Reserve Bank of Richmond, 80 F.3d 895, 903 (4th Cir. 1996) (citing Kent v. Humphries, 50 N.C.App. 580, 275 S.E.2d 176, 182–83, modified, 303 N.C. 675, 281 S.E.2d 43 (1981); Overstreet v. Brookland, Inc., 52 N.C.App. 444, 279 S.E.2d 1, 6 (1981)). As discussed above, Plaintiff has not alleged facts indicating that Defendant did not intend to repair the seven bridges at the time it proposed the repairs that were later rejected by the NCDOT.

## C. Plaintiff's Warranty Claims

### 1. Express Warranty

Defendant contends that Plaintiff has not identified an express warranty provided by Defendant. In response, Plaintiff asserts that it has alleged that Defendant expressly warranted that Defendant's work would conform to the Specifications. Doc. 11 at 13.

To recover for a breach of express warranty pursuant to N.C. Gen. Stat. § 25–2–313, a plaintiff must prove "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and that this express warranty was breached by the defendant." Harbor Point Homeowners' Ass'n v. DJF Enters., Inc., 206 N.C. App. 152, 162, 697 S.E.2d 439, 447 (2010) (citation and quotation marks omitted). "It is not necessary to the creation of an express warranty that

the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." N.C. Gen. Stat. § 25–2–313 (2005).

"[T]he issue of whether a seller's representations amount to an express warranty is ordinarily a question of fact." Bussian v. DaimlerChrysler Corp., 411 F.Supp.2d 614, 620 (M.D.N.C. 2006) (citing Pake v. Byrd, 55 N.C.App. 551, 286 S.E.2d 588 (1982); N.C. Gen. Stat. § 25–2–313, cmt. 3)); see also Smart Online, Inc. v. Opensite Technologies, Inc., No. 01 CVS 09604, 2003 WL 21555316, at *4 (N.C. Super. Ct. June 17, 2003) (Business Court) ("whether defendant made or breached any express warranties ... is a question of fact to be decided by the trier of fact") (quoting Muther-Ballenger v. Griffin Elec. Consultants, Inc., 100 N.C.App. 505, 509, 397 S.E.2d 247, 250 (1990)).

Here, Plaintiff has alleged that Defendant's proposals to provide concrete were made "per the specifications [Plaintiff] had provided for the project," Doc. 6 at ¶ 8, including a "12 Month Guarantee" contained within those Specifications. See Doc. 6 at ¶ 7(D). Plaintiff argues that its acceptance of Defendant's proposal was in "reasonable reliance on the express statements that Defendant's proposal included the Specifications, that Defendant had expertise in NCDOT procurement and project procedures…and upon the

warranties contained therein." Doc. 11 at 13 (quoting Doc. 6 at ¶ 10). Accordingly, the undersigned is persuaded that Plaintiff's allegations are sufficient to overcome Defendants' Motion to Dismiss Plaintiff's express warranty claim.

### 2. Implied Warranties of Merchantability & Fitness for a Particular Purpose

"A warrant of merchantability is implied in every sale of goods if the seller is a merchant of the kind of goods sold." <u>McDonald Bros., Inc. v. Tinder Wholesale, LLC</u>, 395 F.Supp.2d 255, 264 (M.D.N.C. 2005) (citing N.C. Gen. Stat. § 25–2–314). To be merchantable, goods must be, among other things, "fit for the ordinary purposes for which such goods are used." N.C. Gen. Stat. § 25–2–314.

In contrast, an implied warranty of fitness for a particular purpose contemplates a use of a product that is peculiar or different from its ordinary use. <u>See</u> N.C. Gen. Stat. § 25–2–315.

Consequently, warranties of merchantability and fitness are mutually exclusive. <u>See e.g.</u>, <u>Renfroe v. Ethicon, Inc.</u>, 1:20CV362, 2021 WL 1195819, at *4 (M.D.N.C. Mar. 30, 2021) (holding warranty of fitness for a particular purpose failed because the product was sold for its ordinary purpose which is covered by a warranty of merchantability); <u>McDonald Bros., Inc. v. Tinder Wholesale, LLC</u>, 395 F.Supp.2d 255, 266 (M.D.N.C. 2005) ("Ordinary use of a

product forecloses recovery under the implied warranty of fitness for a particular purpose").

Here, determining whether the use of Defendant's concrete in the bridge overlays was an "ordinary use" or a "particular use" is a necessary predicate to deciding which of these implied warranties could be viable. The current record, however, is not sufficient to make this determination.

### 3.  Warranty for Workmanlike Quality

"[T]he purpose of the warranty [for workmanlike quality] is to protect homeowners from defects which can only be within the knowledge of vendors." Gaito v. Auman, 313 N.C. 243, 251, 327 S.E.2d 870, 876 (1985). As one court has noted, North Carolina Supreme Court cases "make clear that the warranty [for workmanlike quality] . . . is implied only in contracts (i) for the sale of a dwelling recently completed or then under construction (ii) between a builder and an initial vendee." Crescent University City Venture, LLC v. AP Atlantic, Inc., 15 CVS 14745, 2019 WL 3765313, at *43 (N.C. Super. Ct. Aug. 8, 2019) (collecting North Carolina Supreme Court cases) (finding that because the contract was "not for the sale or construction of any dwelling, but for the sale and delivery of certain goods, i.e., roof and floor trusses," a claim for implied warranty of workmanlike construction was misplaced).

19

In this case, Plaintiff's claims rest on the sale of goods to be used in the construction of multiple bridges, rather than a dwelling. Therefore, Plaintiff may not recover under a theory of breach of a warranty of workmanlike quality.

### D. Breach of the "Repair Contract"

Defendant argues that Plaintiff has failed to allege that the "Repair Contract" is a separate and enforceable contract. See Doc. 10 at 24 ("Plaintiff cannot establish separate consideration by agreeing to pay [the] amount already contractually owed"). In response, Plaintiff contends that its release of the Holdback Amount was adequate consideration to support the formation of the Repair Contract as a separate and binding agreement.

"A contract must be supported by consideration or binding promises that are mutually agreed upon by the parties." Buxton v. Gary Jobe Builders, Inc., 155 N.C.App. 776 No. COA02-428, 2003 WL 138921, at *2 (unpublished table opinion) (citing Smith v. Barnes, 236 N.C. 176, 178, 72 S.E.2d 216, 218 (1952)).

Payment of a pre-existing debt cannot serve as consideration in the formation of a new contract. First American Savings Bank, F.S.B. v. Adams, 87 N.C.App. 226, 230-31, 360 S.E.2d 490,494 (1987) (explaining "payment of the $25,000 could not have represented consideration for a new binding agreement to extend the time of payment, as it was a payment for an antecedent debt, namely delinquent interest on the original loan"); see also Recycling Equipment, Inc. v. E Recycling Systems, LLC, Civil Action No. 5:14–

CV–00056, 2014 WL 6977766, at *4 (W.D.N.C. Dec. 9, 2014) ("Payment on an antecedent debt cannot be consideration for alteration of an existing contract").

Here, Plaintiff initially withheld the Holdback Amount which was purportedly due under the parties' original contracts. Further, Plaintiff alleges that although Defendant asked if Plaintiff could release "at least 50%" of the Holdback Amount when the parties were discussing the concrete repairs, Plaintiff released the entire Holdback Amount because it believed that Defendant would pay for the repairs. Under these circumstances, the undersigned finds that Plaintiff has not adequately alleged the existence of a separate Repair Contract; rather, these discussions represented continual negotiations with respect to the parties' obligations under the original agreements. See Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corporation, 16 CVS 217, 2017 WL 1148793, at *8 (Super. Ct. of N.C. Mar. 27, 2017) (finding allegations that contract had been orally modified were nothing more than a dispute over the interpretation and performance of the original contract).

## IV.  Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. 9) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. That Defendant's motion be **GRANTED** as to Plaintiff's claims of fraud, unfair and deceptive trade practices, negligence, products liability, breach of warranty for workmanlike quality, and breach of the "Repair Contract" and that these claims be dismissed.

2. That Defendant's motion be **DENIED** as to Plaintiff's claims for breach of express warranty, breach of warranty of merchantability, and breach of warranty of fitness for a particular purpose.

Signed: February 28, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

23